UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-398-H

VIVIAN CAMPBELL AUDAS                                                    PLAINTIFF

V.

CENTRAL STATES SOUTHEAST &
SOUTHWEST PENSION FUND                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Vivian Audas, is the divorced spouse of Kenneth Audas who is a beneficiary under the Central States Southeast and Southwest Areas Pension Fund (the "Defendant"). Plaintiff disputes the amount of her entitlement to her former husband's pension rights. Plaintiff frames the dispute in terms of Defendant's mistreatment of spouses generally. She says that Defendant has plenty of resources to make larger payments that she is owed. In fact, resolution of this case has nothing to do with Defendant's treatment of spouses, its past financial abuses or its current financial condition. The matter is resolved based upon which state court domestic relations order actually governs the right to pension benefits. The Employee Retirement Income Security Act ("ERISA") has specific rules governing this issue and the Court will apply them.

I.

Vivian and Kenneth Audas were married on July 8, 1966. They divorced on September 17, 1993. Kenneth Audas retired on December 30, 1998. He died on November 18, 2006. Plaintiff filed this lawsuit on August 15, 2006, claiming monthly pension benefits of $983 and

back payments of approximately $100,000.  Eventually Defendant denied the demand stating that Plaintiff was entitled to monthly benefits of either $385.79 or $364.43 and back payments of over $37,800.

Prior to the federal lawsuit, the Jefferson Family Court had issued three potentially relevant domestic relations orders ("DRO"):  one dated May 13, 1996, another dated September 23, 2003 and a third dated September 13, 2005.  Under the 1996 DRO, Plaintiff would be entitled only to those benefits vested between 1966 and 1993.  Those monthly benefits would be approximately $360.  Under the 2003 DRO, Plaintiff would be entitled to a monthly benefit of as much as $1,208.19.  Under the 2005 DRO her monthly benefit would be $364.43.  This Court must now determine whether Defendants' decision to apply the 2005 DRO was a reasonable exercise of its discretion.

## II.

Defendant is a not-for-profit Taft-Hartley trust regulated by ERISA.  29 U.S.C. § 1001, *et seq.*  It is an employee pension benefit plan as defined in 29 U.S.C. § 1002(2)(A).  Its trustees administer the trust, which provides pension benefits to cover retired union members in the Teamster Industry.  The trustees are comprised of industry and union representatives and, therefore, act with no apparent conflict of interest.  They are required to discharge their fiduciary duties "in accordance with documents and instruments governing the Plan . . . ."  29 U.S.C. § 1104(a)(1)(D).  The members earn pension credits when their employers pay contributions (at rates stated in the collective bargaining agreement) to Defendant for their retirement benefits.  Spouses of covered employees may receive surviving spouse benefits as beneficiaries.  An ex-spouse of a covered employee may receive benefits from the pension fund as an alternate payee,

under the terms of a Qualified Domestic Relations Order ("QDRO").

In general, ERISA states that plan benefits are ordinarily not assignable or alienable, except under the terms of a QDRO.  A QDRO creates the existence of an alternate payee's right to receive all or a portion of a participant's benefits under a plan.  29 U.S.C. § 1056(d)(3)(B)(I). ERISA states the requirements that a DRO must meet to be approved as a QDRO by a plan, and states that the anti-assignment and alienation provisions of ERISA shall not apply in respect to benefits payable to a participant pursuant to DRO which is determined to be QDRO.  29 U.S.C. § 1056(d)(3)(A).  And, § 206 states that when a DRO is received by a plan, the plan administrator "shall determine whether such order is a qualified domestic relations order . . . ."  29 U.S.C. § 1056(d)(3)(g)(i)(II).

Plaintiff's rights to pension benefits from Defendant as an alternate payee, will depend upon the terms of a QDRO, not upon any independent ERISA provision.  Any state court order relating to plan benefits, which is not determined to be a QDRO by an ERISA regulated plan, violates the statute's anti-assignment and alienation rules and is preempted.  29 U.S.C. § 1144. ERISA's preemption section only contains an exception for a QDRO.  29 U.S.C. § 1144(b)(7). Thus, one seeking benefits from a plan as an alternate payee will only have rights (which escape preemption and do not constitute an unlawful alienation) under a DRO if it is determined by Defendant to be a QDRO, pursuant to 29 U.S.C. § 1056(d)(3).  The only substantial dispute between Plaintiff and Defendant depends upon which DRO issued by the Family Court is a QDRO.

The Sixth Circuit has reviewed the discretionary grants of authority to the Trustees of both the Defendant's Pension and Health and Welfare Funds and found that they have the

necessary discretion to apply the arbitrary and capricious standard.  Under that standard, the reviewing court does not have to agree with the Trustees.  When they can offer a reasonable explanation based on the evidence, their decision is not arbitrary and capricious.  A reviewing court is limited to a determination of whether their actions were done rationally and in good faith, not whether the decision was right.  *Taylor v. Central States Pension Fund,* 996 F.2d 1217 (table), 1993 WL 1290915 (6th Cir. June 3, 1993); *Gardner v. Central States, Southeast and Southwest Areas Pension Fund*, 14 F.3d 601 (table), 1993 WL 533540 (6th Cir. 1993); *Whisman v. Robbins*, 55 F.3d 1140 (6th Cir. 1995).  When trustees offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.  *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

III.

A review of the background of the potentially relevant DROs will amply clarify matters. Plaintiff's 1993 divorce was hotly contested.  After an involved court battle, the Jefferson Family Court issued its DRO on May 13, 1996.  Under its terms, Plaintiff could be receiving approximately $350 per month.  On April 2, 1996, Defendant approved the 1996 DRO as a QDRO.  Apparently, the matter was a non-issue until well after Ken Audas' retirement when the pension rights were actually payable and Plaintiff sought to expand her rights.  In 2003, Plaintiff went back to Jefferson Family Court and obtained a new DRO which substantially expanded her pension rights.  Plaintiff asked Defendant to approve the 2003 DRO as a QDRO.  The administrative record shows that Defendant never gave that approval.

Plaintiff's most pertinent legal argument is that Defendant somehow wrongly refused to accept her request that the 2003 DRO be accepted as a QDRO.  However, the facts show

4

otherwise.  Immediately after the Jefferson Family Court entered the 2003 DRO, Plaintiff's

husband appealed that order to the Kentucky Court of Appeals.  During the interim of the appeal,

Plaintiff asked Defendant to approve the 2003 DRO as a QDRO.  However, on December 16,

2004, Defendant responded with specific reasons why it could not so approve the 2003 DRO.  A

few days later, on December 21, 2004, it amplified those reasons.  Five months later, the

Kentucky Court of Appeals determined that the Jefferson Circuit Court had not made a proper

showing prior to modifying the 1996 QDRO.  Consequently, without such a finding, the Court of

Appeals ruled the court lacked jurisdiction and had improperly modified the 1996 QDRO.

Therefore, the Court of Appeals vacated the 2003 DRO.

When the divorce case was remanded to the lower court, the Jefferson County Family

Court denied several motions to reinstate the 2003 DRO.  Finally, on September 13, 2005, the

court issued an amended DRO.  Defendant determined that the 2005 DRO was a QDRO.  By its

terms, this order limited Plaintiff's rights as an alternate payee to 50% of her ex-husband's

benefits, which accrued from the date of the parties' marriage on July 8, 1966, to the date of

dissolution of marriage on September 17, 1993.  The court made clear that it was creating a new

QDRO having the same terms and effect as the 1996 DRO.  On October 20, 2005, Defendant

stated that it would administer the 2005 QDRO according to its terms.  There is no dispute as to

the calculation of benefits under each of the proposed orders.

After some procedural wrangling, Defendant eventually received Plaintiff's appeal and

performed an administrative review.  This case was exhaustively briefed and argued.

Defendant's Trustee Appellate Review Committee has thoroughly reviewed all of the

circumstances and has reasonably applied the pertinent law.  On August 15, 2007, the Trustee

5

Appellate Review Committee concluded that the 2005 QDRO governs distribution of pension benefits in this case.  The determining factor regarding Plaintiff's appeal is that the Trustees decided, based on all of the evidence in the administrative record, that Plaintiff's rights as an alternate payee must be based on the provisions of the QDRO entered on September 13, 2005. Defendant reasonably rejected Plaintiff's arguments that she was entitled to benefits based on an earlier 2003 DRO which was vacated by the Kentucky Appellate Court and which Defendant never determined to be a QDRO.

The 2005 QDRO is the only final binding order from the Jefferson Family Court pertaining to the pension benefits at issue.  There is no dispute as to its specific provisions, only as to its application here.  Only the 2003 DRO might possibly claim application.  However, Defendant denied QDRO status for that order when it was presented in 2004.  Moreover, the Kentucky Court of Appeals vacated and remanded that order in March, 2005.  Notwithstanding Plaintiff's dissatisfaction with the entire process and its complaint about the operation and the leadership of Central States' pension fund, the Court finds here that Defendant was properly within its discretion to determine that pension benefits should be distributed in accordance with the 2005 QDRO.  Indeed, Defendant has made the correct and only reasonable determination.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that judgment is entered in favor of Defendant and Plaintiff's complaint contesting the validity of Defendant's determination is DISMISSED WITH PREJUDICE.

This is a final and appealable order.

6

cc:     Counsel of Record